ATCHISON, T. & S. F. RY. CO. v.
SPRINGER.
No. 9570.

United States Court of Appeals
Seventh Circuit.
Jan. 25, 1949.

R. S. Outlaw, T. J. Barnett and Francis J. Steinbrecher, all of Chicago, Ill., for appellant.

Branko M. Steiner, of Chicago, Ill., and Lawrence Genesen, of Argo, Ill., for appellee.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Action was brought in the District Court by appellant, The Atchison, Topeka and Santa Fe Railway Company, to recover unpaid freight charges allegedly incurred by appellee as demurrage for the detention, for forty-seven days, of a carload of shavings or sawdust. Appellee made counterclaim for failure of appellant to divert or reconsign the car in accordance with instructions and resultant loss. The trial judge entered judgment for appellant for seven days' demurrage amounting to $31.-60, and for appellee on his counterclaim, in the amount of $172.57, for the value of the contents of the car, from which judgment this appeal is taken. The facts were stipulated by the parties or were otherwise shown by the uncontroverted evidence.

On June 28, 1944, Whitmer Mills of Albuquerque, New Mexico, shipped via the Santa Fe a carload of shavings owned by appellee and consigned to himself at Arkansas City, Kansas. On June 29, 1944, appellee diverted said carload of shavings to Maurer-Neuer Corporation, Arkansas City, Kansas. At 1:00 a. m. on July 3, 1944, said car arrived at Arkansas City, Kansas, and, prior to 7:00 a. m. on the same day, was placed on the other-than-public delivery track, serving Maurer-Neuer Corporation at Arkansas City, Kansas.

During the time in which the controverted demurrage charges accrued there were in force applicable tariffs granting consignees of carload shipments a period of forty-eight hours, known as "free time," to unload and release the freight cars in which such shipments had been delivered. "Free time" began to run at the first 7:00 a. m. after delivery of such shipment to the consignee. Upon the expiration of such free time, demurrage charges accrued at $2.20 per day for the first two days' detention of each freight car, and at $5.50 per day for each day's detention thereafter.

Tariff rules also provided that a request for diversion or reconsignment must be made or confirmed in writing. A custom existed in the trade, whereby verbal orders to a carrier to divert a shipment were accepted on shipper's agreement later to confirm such verbal orders in writing by the shipper and whereby such verbal request became valid as of the date made, upon receipt by the carrier of said written confirmation.

On July 3, 1944, the day the car was delivered to Maurer-Neuer Corporation, the consignee wired appellee that the car contained fine sawdust, not the shavings they had ordered, and asked appellee to wire disposition to be made of the car. Santa Fe was notified on July 10, 1944, by Maurer-Neuer Corporation of such refusal to accept.

On July 11, 1944, appellant notified its agent at Chicago, Illinois, by telegram, that the consignee had refused the shipment, and said agent on July 12, 1944, notified appellee of consignee's refusal and requested his advice on the disposition to be made of the shipment.

Meantime, appellee, acting on information that the car had been partially unloaded by the consignee, advised appellant's rate clerk, Honan, to that effect in a telephone conversation on July 7, 1944, and *requested that the car in question be removed from consignee's siding at Arkansas City, Kansas, by Santa Fe, that it be weighed by Santa Fe, and if found to contain the weight specified in the bill of lading covering the movement from Albuquerque, that it be diverted to appellee at Milwaukee, Wisconsin,* and was informed by Honan that diversion or reconsigning ad-

vice would have to be given to the railroad by the consignee, and that *Santa Fe could not accept a diversion as requested with a condition attached, and that if appellee wanted to divert to Milwaukee without any condition attached the railroad would do it.* Appellee did not at any time confirm in writing his telephoned request of July 7, 1944, but renewed it by telephone on July 11, 1944.

Employees of Santa Fe on four or five occasions thereafter requested appellee to give instructions regarding disposition to be made of the car, but did not, at any time, receive any instructions different from those of July 7, 1944.

Findings 10 and 11[1] of the District Court's findings of fact are not entirely accurate and are somewhat misleading. The inferences contained in such findings are unsupported by the evidence. The inference from Finding 10 is that the shipper unconditionally requested the Santa Fe to ship the car in question to Milwaukee; and in Finding 11 that the resultant demurrage charges occurred by reason of the carrier's wrongful refusal to accept the unconditional request. The stipulated and undisputed facts are as heretofore recited that the request was conditioned upon acts to be performed by the carrier unrelated to its duties as a carrier and not provided for by its tariffs, and conditioned also upon the results to be determined from such acts. Appellee at no time gave the carrier a direct and unconditioned order either oral or written to ship the car to Milwaukee.

On August 3, 1944, appellee sent a letter to the railroad abandoning said shipment and authorizing it to make such disposition thereof as it desired; pursuant to such notice it removed the car from the consignee's siding on August 3, 1944, and sold the contents at public auction on August 22, 1944, for $5.00 after an expenditure of $4.70 to advertise the sale. Forty-seven days' detention had then accumulated at $2.20 per day for the first two days and at $5.50 per day for the remaining forty-five days, making a total demurrage charge of $251.90. Federal transportation tax thereon at three per cent or $7.56 and advertising expense of $4.70, made a total due of $264.16. Crediting $5.00 thereon, received from the sale, left a net of $259.16 due the carrier, if it was entitled to recover in full on its claim.

The District Court concluded that Santa Fe should have acted upon the appellee's oral diversion order of July 7, upon July 11, 1944, when it was notified by the consignee of its refusal of the shipment; and accordingly awarded Santa Fe only the demurrage which accrued to and including that date, and found the subsequent disposal of the car's contents through sale wrongful.

The facts as above recited are embraced in the findings of the District Court with the exception of those italicized and noted in our reference to that Court's Findings 10 and 11.[2]

Appellant principally contends that it should have been furnished with a written

---

[1] Finding 10 and 11.

10. That on July 7th, and again on July 11th, and on other days thereafter, the defendant requested the plaintiff to ship said carload of shavings and sawdust to defendant at Milwaukee, Wisconsin.

11. That plaintiff failed to accept defendant's order, as a result of which certain demurrage charges accrued until August 3rd, 1944, when said shipment of shavings and sawdust was sold to the highest bidder for $5.00.

[2] The form of the condition attached to appellee's requests for a diversion or reconsignment to Milwaukee was stipulated to be as follows:

"It is further stipulated and agreed that M. A. Springer, defendant herein, acting on information that the car had been partially unloaded by said consignee and advising plaintiff of his information to that effect, in a telephone conversation on July 7, 1944, requested that the car in question be removed from the consignee's siding at Arkansas City, Kansas, by plaintiff, that it be weighed by plaintiff, and if found to contain the weight specified in the bill of lading, the car and contents be diverted to Shavings and Sawdust Company, Not Inc., at Milwaukee, Wisconsin."

That Santa Fe's employee, Honan, told the appellee such conditional diversion order could not be accepted is as firmly established by the uncontradicted evidence of Honan.

request, or a written confirmation of a verbal request to divert or reconsign, and that in any event and regardless of form, such request should not have conditioned diversion or reconsignment of the car to Milwaukee only if weighed, and if the weight was still the same as at the point of origination, Albuquerque, New Mexico.

Appellee contends it was relieved from giving a written request or written confirmation of a verbal request because such requirement was waived by statements of appellant's employees, that a diversion or reconsignment order must come from the consignee.

Appellee was required in the first instance to make a request to the appellant which it could lawfully perform. The railroad itself could neither intentionally nor inadvertently through waiver or negligence, accept and perform a request which was not warranted by an applicable tariff and was inherently preferential or otherwise discriminatory. The conditions attached to appellee's request were such that neither the making of it orally, nor its confirmation in writing, would avail the appellee.

This action arose out of the laws of the United States regulating commerce, Louisville & Nashville R. R. Co. v. Rice, 247 U.S. 201, at page 203, 38 S.Ct. 429, 62 L.Ed. 1071, and the court below had jurisdiction thereof by virtue of the provisions of Title 28, § 41(8) [now § 1337], United States Code Annotated, Judicial Code, § 24(8), as amended. Consignors, carriers, and consignees are all presumed to know the existence, effect, and applicability of tariff provisions. American Railway Express Co. v. Daniel, 269 U.S. 40 at page 42, 46 S.Ct. 15, 70 L.Ed. 154; Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink, 250 U.S. 577, at page 581, 582, 40 S.Ct. 27, 63 L.Ed. 1151. The salutary purpose of the rule is to shut out opportunity for discrimination and favoritism (9 American Jurisprudence 533).

Paragraph (7) of Section 6 of the Interstate Commerce Act, 49 U.S.C.A. § 6(7), provides as follows:

"No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

The strict obligations and limitations imposed by the foregoing statute on all public carriers engaged in interstate commerce have been held by the Supreme Court to be superior to obligations imposed by state statute, Gulf, Colorado and Santa Fe Railway Co. v. Hefley, 158 U.S. 98, at page 102, 15 S.Ct. 802, 39 L.Ed. 910, to obligations imposed by contract, Texas & Pacific Railway Co. v. Mugg & Dryden, 202 U.S. 242, at page 245, 26 S.Ct. 628, 50 L.Ed. 1011, and to obligations arising out of accidental or even intentional misstatement or misquotation of a tariff. Kansas City Southern Railway v. Carl, 227 U.S. 639, at page 653, 33 S.Ct. 391, 57 L.Ed. 683.

Davis v. Henderson, 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182, was a suit brought by a shipper of cattle against a railroad for failure to furnish a car within a reasonable time after notice. The plaintiff had notified the station agent orally, and the latter had accepted his notice. A tariff rule required notice in writing. On appeal from judgment for the plaintiff, Mr. Justice Brandeis said, 266 U.S. at page 93, 45 S.Ct. at page 24:

"There is no claim that the rule requiring written notice was void. The conten-

tion is that the rule was waived. It could not be. The transportation service to be performed was that of common carrier under published tariffs. The rule was a part of the tariff. Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 197, 36 S.Ct. 541, 60 L.Ed. 948; Missouri, Kansas & Texas Ry. Co. v. Ward, 244 U.S. 383, 388, 37 S.Ct. 617, 61 L.Ed. 1213; Davis v. Cornwell, 264 U.S. 560, 562, 44 S.Ct. 410, 68 L.Ed. 848."

In St. Louis-San Francisco Ry. Co. v. Robinson, 1927, 175 Ark. 126, 298 S.W. 881, 882, plaintiffs sought to recover for damages resulting from the alleged failure of the railroad to divert a carload of potatoes. The defendant railroad interposed the defense that the shipment was governed by a rule of the Interstate Commerce Commission which provided that:

"A request for diversion or reconsignment must be made or confirmed in writing, * * *."

The request to divert the shipment relied upon was oral and there was no written confirmation thereof. On appeal, the court reversed judgment for the plaintiff and dismissed the case, saying, 298 S.W. at page 882:

"Appellees attempt to sustain the judgment on the theory that the tariff contained in the rules of the Interstate Commerce Commission governing the diversion of carload shipments en route does not apply to perishable products, such as potatoes, onions, etc. They say that fresh or green fruits, fresh or green vegetables (including potatoes and onions), and fresh berries and melons are excepted specifically from the tariff or rules. We do not so interpret the tariff or rules. The exception referred to by appellees relates to rates and charges, and not to diversion in shipments en route. A request for diversion in shipments must be either in writing or confirmed in writing.

"In Keogh v. C. & N. W. R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183, in discussing the legal rights of a shipper against an interstate carrier, the Supreme Court of the United States said:

" 'The rights as defined by the tariff cannot be varied or enlarged by either contract

or tort of the carrier (citing numerous authorities). This stringent rule prevails, because otherwise the paramount purpose of Congress—prevention of unjust discrimination—might be defeated.' "

The Interstate Commerce Act, 49 U.S. C.A. § 6(7), supra, as applied to the Santa Fe and the shipment in question prohibited the carrier from engaging in the transportation of property unless the charges therefor were published in its tariffs, and from extending to appellee, as shipper, any privileges or facilties in the transportation of property, except such as were therein specified.

The Santa Fe would have been required by the diversion or reconsignment order of appellee to go upon consignee's track, remove the car of sawdust or shavings, weigh it and determine whether or not it contained the same weight as when it left Albuquerque, and in the event it did, to divert or reconsign it to Milwaukee, Wisconsin. If the car weighed less than it did at Albuquerque, the car was to be returned to the consignee's siding or otherwise disposed of, possibly, as was ultimately done, by sale. The railroad was thus called upon to render a service upon appellee's request that it was not at liberty to render under the provisions of applicable tariffs. It was requested to act as shipper's agent in ascertaining the weight of the car and in deciding whether the car should be forwarded. As a public carrier, it would have resumed the carriage of the shipment to Milwaukee only in case its previous course of action met the condition embraced in appellee's request, and the burden was placed upon the carrier to determine whether it did so meet the conditions.

The car had arrived at its only authorized destination and been placed on the consignee's siding. The condition to appellee's verbal request would have involved a service for which the carrier could have made no charge under applicable tariffs, a service which it did not offer to perform for all shippers, and which, therefore, it could not have lawfully performed for appellee.

In Davis v. Cornwell, 264 U.S. 560, 44 S.Ct. 410, 68 L.Ed. 848, the plaintiff sued

on a contract with the defendant railroad to furnish cattle cars on a certain day to be loaded and then transported in interstate commerce. It was not shown that the published tariffs provided in terms for such a contract. In reversing judgment for plaintiff, the court said, 264 U.S. at page 562, 44 S.Ct. at page 410:

"That the thing contracted for in this case was a service preliminary to the loading is not a difference of legal significance. The contract to supply cars for loading on a day named provides for a special advantage to the particular shipper, as much as a contract to expedite the cars when loaded. It was not necessary to prove that a preference resulted in fact. The assumption by the carrier of the additional obligation was necessarily a preference. The objection is not only lack of authority in the station agent. The paramount requirement that tariff provisions be strictly adhered to, so that shippers may receive equal treatment, presents an insuperable obstacle to recovery."

To the same effect are Chicago & Alton Ry Co. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033, Ann.Cas.1914A, 501, and Northern Wisconsin Produce Co. v. Chicago & N. Ry. Co., 203 Wis. 549, 234 N.W. 726.

The filing of an unconditional written request for the diversion or, in lieu of it, the making of an unconditional verbal request and the later confirmation of same in writing were required for the carrier to undertake the diversion to Milwaukee. Appellee was not excused from compliance because the carrier required a release of the shipment from the consignee. Such release did not authorize the diversion but simply eliminated the consignee from further consideration and made it possible for the shipper to divert.

No question is raised by appellee as to the manner of disposing of the contents of the car after its abandonment.

It is our view that the conditional request made by appellee could not have been lawfully performed by appellant as a public carrier, and that in the absence of a request for diversion or reconsignment which appellant was required to perform no course was open to the carrier other than that which it pursued.

The judgment is reversed and the cause remanded with directions to enter judgment for appellant in the sum of $259.16 and costs of suit.