## BERNSTEIN BROS, PIPE & MACHINERY CO. v. DENVER & R. G. W. R. CO.
No. 4340.

United States Court of Appeals
Tenth Circuit.

Dec. 18, 1951.

---

442

1. Hereinafter called the Railroad Company.

Albert L. Vogl, Denver, Colo. (Carle Whitehead, Denver, Colo., was with him on the brief), for appellant.

William G. Prescott, Denver, Colo. (Thomas R. Woodrow, Denver, Colo., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

The Denver and Rio Grande Western Railroad Company [1] brought this action against Bernstein Bros. Pipe & Machinery

Company[2] to recover $259.21 additional transportation charges and Federal transportation tax on two carloads of devices shipped from Middletown, Pennsylvania, to Pueblo, Colorado.

The complaint alleged that the applicable tariff provided for charges in the amount of $1,493.71, plus $44.81 tax, a total of $1,538.52, and that at the time of delivery the Railroad Company collected only $1,-279.31. The complaint alleged that the action "arises under the laws of the United States regulating commerce," 49 U.S.C.A. § 3(2) and § 6(7).

From a judgment in favor of the Railroad Company, Bernstein has appealed.

The devices are Stewart-Warner Southwind Portable Heating Units, Model 782. They embrace (a) a Lauson R. S. C., ball bearing, air cooled, 1½ H.P., one cylinder, 4-cycle internal combustion engine, with attached magneto; (b) a Stewart-Warner Heater, combustion type, with over-heat switch and Champion spark plug, and (c) a special super-charger, turbine-type blower. Each device functions as a unit. The internal combustion engine must first be started. It then drives the magneto which supplies electricity to the spark plug on the Stewart-Warner Heater to cause combustion of gasoline in the latter, which combustion is the source of heat produced by the unit, and it drives the turbine-type blower so that the latter forces the hot air out of the heater, into three ducts connected with hoses or tubes by which the heat is conducted to the place of use.

The correct rate depends upon which of two tariffs is applicable.

Item 5404 of Consolidated Freight Classification No. 17, reads:

"Item

"Boilers, Furnaces, Radiators, Stoves, Related Articles or Parts Named:

"5405 Gas, gasoline or oil, noibn, including gas radiators, noibn, * * * in barrels, boxes or crates."

2. Hereinafter called Bernstein.

3. Turner, Dennis & Lowry Lumber Co. v. Chicago, M. & St. P. Ry. Co., 271 U.

The term "noibn" means not otherwise indexed by name.

Item 27185 of Consolidated Freight Classification No. 17, reads:

"Item

"Machinery or Machines, or Parts Named:

"27185 Air cleaners, coolers, heaters, humidifiers or washers and blowers or fans combined, see Note 6, Item 27190, loose or in packages."

Bernstein asserts that the trial court did not have jurisdiction of the action.

28 U.S.C.A. § 1337 in part provides:

"§ 1337. *Commerce and anti-trust regulations*

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce * * *."

This section gives the United States District Courts original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce, regardless of the citizenship of the parties or the amount in controversy.[3]

49 U.S.C.A. § 3(2) in part provides: "*Payment of freight as prerequisite to delivery.* No carrier by railroad subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the commission may from time to time prescribe to assure prompt payment of all such rates and charges and to prevent unjust discrimination: * * *."

49 U.S.C.A. § 6(7) provides: "*Transportation without filing and publishing rates forbidden; rebates; privileges.* No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of * * * property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier

S. 259, 261, 46 S.Ct. 530, 70 L.Ed. 934; Mulford v. Smith, 307 U.S. 38, 46, 59 S. Ct. 648, 83 L.Ed. 1092.

charge or demand or collect or receive a greater or less or different compensation for such transportation of * * * property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

■ The amount of a transportation charge for goods shipped in interstate commerce is not a matter of private contract between the parties. The shipper and carrier are alike bound by the established and published tariff rate under the provisions of §§ 3(2) and 6(7), supra. No contract of the carrier can reduce the amount legally payable or release from liability, a shipper who has assumed an obligation to pay the charges. Nor will any act or omission of the carrier estop or preclude it from enforcing payment of the full amount under the tariff by a person liable therefor.[4] If less than the established and published applicable rate is collected, the carrier has the duty and the right to collect the amount of the undercharge. The right of the carrier to collect arises out of the provisions of the Interstate Commerce Act.[5]

■ It has been established since the decision of the Supreme Court in Louisville & N. R. R. Co. v. Rice, 247 U.S. 201, 202, 203, 38 S.Ct. 429, 62 L.Ed. 1071, that a suit to recover a freight undercharge arises under a law regulating commerce, since the duty to pay and the right and obligation to collect grow out of and depend upon the Interstate Commerce Act.[6]

Anderson v. Bingham & G. Ry. Co., 10 Cir., 169 F.2d 328, 14 A.L.R.2d 987, is clearly distinguishable from the instant case. That case involved an accident resulting from a train and automobile collision at a crossing. The negligence charged against the Railway Company was failure to comply with the Safety Appliance Act, 45 U.S.C.A. § 1. We there held that while the Safety Appliance Act imposes duties upon carriers and creates correlative rights in favor of injured persons, the source, nature, or incidence of a right of action for the breach of such a duty has its genesis in the statutory or common law of the state, and does not arise under the laws of the United States. Here, since the obligation to pay and the right and duty to collect arises solely by virtue of §§ 3(2) and 6(7), supra, of the Interstate Commerce Act, the cause of action sought to be enforced is created by and arises out of an Act of Congress regulating commerce.

■■ A tariff, so long as it is enforced, is, in respect to the rates named, to be treated as though it were a statute binding upon the carrier and shipper alike.[7] Every question of the construction of an interstate tariff is a question of Federal law.[8]

■ If the question is which of two rates apply, and there is no contest about the reasonableness of either rate, and the tariffs contain no technical words or phrases employed in a peculiar meaning, the question is not primarily one for the Interstate Commerce Commission, but is a judicial ques-

4. Louisville & N. R. R. Co. v. Central I. & C. Co., 265 U.S. 59, 65, 44 S.Ct. 441, 68 L.Ed. 900; Atchison, T. & S. F. Ry. Co. v. Kinkade, D.C.Kan., 203 F. 165, 166.

5. Atchison, T. & S. F. Ry. Co. v. Kinkade, supra; Louisville & N. R. R. Co. v. Maxwell, 237 U.S. 94, 97, 98, 35 S.Ct. 494, 59 L.Ed. 853.

6. See, also, White v. Atchison, T. & S. F. Ry. Co., 9 Cir., 149 F.2d 919, 920; Atchi-

son, T. & S. F. Ry. Co. v. Springer, 7 Cir., 172 F.2d 346, 349.

7. Pillsbury Flour Mills Co. v. Great Northern Ry. Co., 8 Cir., 25 F.2d 66; Updike Grain Co. v. Chicago & N. W. Ry. Co., 8 Cir., 35 F.2d 486; Pennsylvania R. R. Co. v. International Coal Co., 230 U.S. 184, 197, 33 S.Ct. 893, 57 L.Ed. 1446.

8. Great N. Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 290, 42 S.Ct. 477, 66 L. Ed. 943.

tion of which the courts have jurisdiction in the first instance.[9]

Texas & Pacific Ry. Co. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255, is distinguishable. That case involved a shipment of railroad cross ties. The Railway Company had not filed and published any specific tariff covering cross ties and the question was whether the word "lumber" in the tariff on lumber was used in a peculiar sense and included cross ties.[10] The court held that question was one primarily for the Interstate Commerce Commission.

The instant case clearly falls within the ruling in Great N. Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 294, 42 S.Ct. 477, 480, 66 L.Ed. 943, where the court said: "Here no fact, evidential or ultimate, is in controversy; and there is no occasion for the exercise of administrative discretion. The task to be performed is to determine the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation was solely one of construction; and preliminary resort to the Commission was, therefore, unnecessary."

We conclude that the court had jurisdiction.

It will be observed that Item 5405 does not specifically include heaters and that Item 27185 specifically includes heaters combined with blowers or fans. Moreover, Item 5405 excludes heaters, when otherwise indexed by name, and the heaters are specifically named in Item 27185. The devices here involved are not gasoline stoves. We think they come within the specific language of Item 27185, "heaters * * * and blowers or fans combined."

 Counsel for Bernstein assert that the absence of a comma after the word "washers" limits the phrase "and blowers combined" to humidifiers and washers. But, we think the meaning of the tariff is clear

and that the phrase "and blowers combined" applies to the entire series. Technical grammatical rules may not be resorted to where the language used is plain.[11]

We conclude that the trial court applied the correct rate and the judgment is affirmed.

9. Great N. Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 291-294, 42 S.Ct. 477, 66 L.Ed. 943; American Railway Express Co. v. Price Bros., 5 Cir., 54 F.2d 67.

10. Great N. Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 293, 42 S.Ct. 477, 66 L.Ed. 943.

11. Holmes v. Phenix Insurance Co. of Brooklyn, 8 Cir., 98 F. 240, 47 L.R.A. 308; Ewing's Lessee v. Burnet, 11 Pet. 41, 36 U.S. 41, 9 L.Ed. 624.