**PORT OF BOSTON MARINE TERMINAL ASSOCIATION et al.,**
Plaintiffs, Appellees,

v.

**BOSTON SHIPPING ASSOCIATION, INC., et al., Defendants,**

**Rederiaktiebolaget Transatlantic, Defendant-Intervenor, Appellant.**

No. 7368.

United States Court of Appeals
First Circuit.

Heard Oct. 8, 1969.

Decided Jan. 8, 1970.

Certiorari Granted April 20, 1970.
See 90 S.Ct. 1360.

**420**

George F. Galland, Washington, D. C., with whom Stephen Moulton, Boston, Mass., Amy Scupi, Washington, D. C., David T. Stitt, Washington, D. C., Moulton, Looney, Mazzone, Falk & Markham, Boston, Mass., and Galland, Kharasch, Calkins & Lippman, Washington, D. C., were on brief, for appellant.

John M. Reed, Boston, Mass., with whom Neil L. Lynch, George W. Stuart, and Withington, Cross, Park & Groden, Boston, Mass., were on brief, for appellees.

Before ALDRICH, Chief Judge, WOODBURY,* Senior Circuit Judge, and McENTEE, Circuit Judge.

ALDRICH, Chief Judge.

The members of the Port of Boston Marine Terminal Association (Terminals), operate pursuant to Federal Maritime Commission Agreement No. 8785, a conference arrangement approved by the Commission under section 15 of the Shipping Act. 46 U.S.C. § 814. Approval permits uniform rates for all "services, facilities, rates, and charges incidental thereto:—wharfage, dockage, free time, wharf demurrage, usage charges, passenger charges, water, electricity." The tariffs so established were first filed with the Commission in 1962. Wharf demurrage was therein defined as a storage charge "levied against cargo remaining on a pier or wharf after the expiration of free time." On imported cargo "free time" was the first five days after unloading, an arbitrary period to permit consignees sufficient access to the cargo to satisfy the carrier's obligation to make delivery. If delivery was not taken within the free time, the charge, by accruing against the cargo, became the consignee's obligation.

If access to cargo was prevented by a strike, the demurrage rate was substantially reduced, but it remained as a charge against unloaded cargo. This led to complaints by consignees. By December 1964, through a series of amendments, Terminals changed the tariff to provide that if the consignee's access was prevented by a strike of longshoremen or other agents of the ship, as distin-

---

* By designation.

guished from employees of Terminals, the reduced demurrage would be called "strike storage" and charged to the vessel instead of to the cargo. This charge was expressed in broad terms, and resulted in shifting the obligation to the vessel even if the strike did not commence until after the expiration of the free time. The new tariff purported to be immediately effective, and hence was imposed without approval by the Commission.

Appellant Rederiaktiebolaget Transatlantic (Swedish) is a common carrier serving the Port of Boston. On January 8, 9, and 10, 1965, its vessel MATTAWUNGA unloaded cargo in Boston at Mystic Terminals. On January 11 there was a general longshoremen's strike. Longshoremen are employees of the stevedoring concerns which serve all vessels. Tally clerks, who are also agents of the vessel, correspondingly struck. Accordingly there could be no completed delivery of cargo to consignees who had not called before January 11. Non-delivery was additionally assured because transportation employees serving consignees observe picket lines. Under the 1964 amendments Terminals charged the resultant demurrage to the various vessels. Mattawunga's bill was $8,154. Swedish denied the obligation. Other carriers similarly situated took the same position.

Thereafter Terminals brought an action in the Massachusetts Superior Court for declaratory relief and for payment against Boston Shipping Association (Shipping), representing various vessel owners and agents. Shipping removed the case to the district court. At the suggestion of Terminals the district court ruled that the Commission had primary jurisdiction and entered a stay permitting Shipping to proceed there. Shipping did so, and lost. Boston Ship-

ping Ass'n, Inc. v. Port of Boston Marine Terminal Ass'n, 1967, 10 F.M.C. 409, hereinafter *Boston Shipping*. It then appealed to the D.C. Court of Appeals, but the appeal was dismissed for late filing. Subsequently Swedish, which was not a member of Shipping, sought to appear before the Commission and to petition for reconsideration.[1] The petition was refused docketing because of lateness. Swedish then sought to intervene as a defendant in the district court proceedings, and that motion was allowed. Upon intervening, Swedish filed an answer raising defenses on the merits. On stipulations of fact the court, without jury, found against all defendants, including Swedish. Swedish, only, appeals.

The first question must concern the jurisdiction of the district court. There is no diversity jurisdiction as to Swedish, for lack of the jurisdictional amount. 28 U.S.C. § 1332. We see no basis for aggregation of the claims against the several defendants. *Cf.* Snyder v. Harris, 1969, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319; Pinel v. Pinel, 1916, 240 U.S. 594, 596, 36 S.Ct. 416, 60 L.Ed. 817; Troy Bank of Troy Ind. v. G. A. Whitehead & Co., 1911, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81. If this were a suit under a tariff, jurisdiction would automatically attach under 28 U.S.C. § 1337, where the amount involved is of no consequence. Peyton v. Railway Express Agency, Inc., 1942, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525; Turner, Dennis & Lowry Lumber Co. v. Chicago, Milwaukee & St. Paul Ry., 1926, 271 U.S. 259, 261, 46 S.Ct. 530, 70 L.Ed. 934. Terminals' tariff was not, however, a tariff in the sense of being within 46 U.S.C. § 817, and was filed with the Commission only as a condition imposed by the prior approval of the conference agreement.[2] We nevertheless

---

1. Swedish asserted a conflict with Volkswagenwerk Aktiengesellschaft v. FMC, 1968, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090, hereinafter *VW*, a case which postdated the *Boston Shipping* decision.

2. General filing requirements for marine terminal tariffs were added by the Commission's General Order 15, 46 C.F.R. §§ 533.1 *et seq.*, which became effective on October 5, 1965, and hence does not apply here.

find a sufficient federal issue. While it is commonly held that the question must appear on the face of the complaint, Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194; Louisville & Nashville R. R. v. Mottley, 1908, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126, the necessity for construing a federal statute may appear by inference. Peyton v. Railway Express Agency, Inc., *supra*. It is true that the complaint did not allege that the change in the agreement had not been approved by the Commission, but neither did it allege approval. Hence we conclude, albeit with some hesitation, that the necessity of approval was raised, and that it sufficiently appeared that a question of construction of the Shipping Act was presented. This is enough to satisfy section 1337.

■ We turn to this question forthwith, as it constitutes Swedish's most significant defense. Section 15 requires that "modifications," as well as the original agreement, receive the prior approval of the Commission. In *Boston Shipping* the Commission, without any discussion of the broad language of the act held that where, under the already approved agreement, there was power to fix charges, a change in incidence, as to who was obligated to pay, was not a modification requiring section 15 filing and approval. In the light of the strictures expressed in *VW*, *supra*, n. 1, this holding seems unsupportable. While, with some consistency, it represented

the Commission's past reading of the statute, the Court in *VW* pointed to the "expansive language" of section 15,[3] and the Commission's "extremely narrow view," and specifically rejected the binding effect of the Commission's administrative construction. 390 U.S. 261, 272–273, 88 S.Ct. 929. Then, referring to the statute's "literal provisions," the Court spoke of possible exceptions only in terms of a "*de minimis* or routine character," and stated that even these must be defined by "appropriate administrative proceedings." 390 U.S. 261, 276, 88 S.Ct. 929.

■ Even this exception could not apply in the case at bar. No administrative proceedings had been held to establish guidelines under which modifications might be found "*de minimis* or routine." Administrative standards cannot be established ex post facto. Cf. NLRB v. Wyman-Gordon Co., 1969, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709, 5 U.S.C. § 553.

We may add, for good measure, that a change in incidence, as distinguished from a change in rate,[4] seems to us anything but routine. Even less routine is an unjustifiable change. The Commission expressly found this one "unjust and unreasonable" to the extent that demurrage was to be charged to the vessel even if the strike did not commence until after the expiration of free time, when the vessel's obligation to make the goods available had been fully per-

---

3. The statute requires the filing of "every agreement * * * or modification * * * thereof * * * fixing or regulating transportation rates or fares * * *." It then provides that the Commission shall approve or disapprove, upon terms stated, and that "before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification, or cancellation * * *." See also n. 4, *infra*.

4. The Commission's prior view, that all rate changes under such an agreement are without section 15, Empire State Highway Transp. Ass'n, Inc. v. American Ex-

port Lines, Inc., 1959, 5 F.M.B. 565, *affirmed*, Empire State Highway Transp. Ass'n, Inc. v. Federal Maritime Board, 110 U.S.App.D.C. 108, 1961, 291 F.2d 336, *cert. denied*, Empire State Highway Transportation Association Inc. v. United States, 368 U.S. 931, 82 S.Ct. 360, 7 L.Ed.2d 194, fell with the overruling of the Commission in *VW*, *supra*. Some changes in rates and charges are now expressly allowable without approval under the 1961 amendment of section 15. This portion is quoted in *VW*, *supra*, 390 U.S. at 269–270, n. 16, 88 S.Ct. 929. The Commission did not rely upon that provision, nor do appellees herein.

formed. 10 F.M.C. at 417–18. It would peculiarly violate section 15's "expansive language" to hold that an unreasonable modification could be rewritten nunc pro tunc and saved in part.[5]

We need consider only one other matter, the question of the binding effect of the *Boston Shipping* decision even though erroneous. We are not concerned with the parties to the proceeding, as they did not join in the present appeal. Nor is the question whether the decision was an appropriate approval—to the extent that it was an approval—of demurrage charges incurred after its date. We must hold that the decision did not bind non-parties to charges sought to be imposed for services rendered prior thereto. *See* Columbia Broadcasting System, Inc. v. United States, 1942, 316 U.S. 407, 418, 62 S.Ct. 1194, 86 L.Ed. 1563; Davis, 2 Administrative Law Treatise § 18.05. Any other conclusion would destroy the statutory requirement.

Reversed; judgment for the intervening defendant.