MARITIME SERVICE CORPORATION,
Plaintiff, Appellant,

v.

SWEET BROKERAGE De PUERTO
RICO, INC., Defendant, Appellee.

MARITIME SERVICE CORPORATION,
Plaintiff, Appellant,

v.

ANDREA SHOE CORP., Defendant,
Appellee.

MARITIME SERVICE CORPORATION,
Plaintiff, Appellant,

v.

Julio F. ROMAN, Defendant, Appellee.

Nos. 75–1277, 75–1303 and 75–1305.

United States Court of Appeals,
First Circuit.

June 25, 1976.

Gilberto Mayo Pagan, Hato Rey, P. R.,
with whom Cancio, Cuevas & Mayo, Hato

Rey, P. R., and Gilberto Mayo Aguayo, Hato Rey, P. R., were on brief for appellants.

Jay A. Garcia Gregory, San Juan, P. R., with whom Eric A. Tulla, O'Neill & Borges, Daniel R. Dominguez, Laffitte & Dominguez, Fiddler, Gonzalez & Rodriguez and Ralph Vallone, Jr., Hato Rey, P. R., were on brief, for appellees and amici curiae.

Before MATTHES,* McENTEE and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

The question in this case is whether an action for demurrage under a tariff filed pursuant to the Shipping and Intercoastal Shipping Acts, 46 U.S.C. §§ 801 et seq. and 843 et seq., is one that "arises under" those Acts so as to provide federal jurisdiction under 28 U.S.C. § 1337.

■ Maritime Service Corporation is an agent of various ocean carriers who are required by the Shipping Acts to file tariffs with the Federal Maritime Commission. The tariffs in question set demurrage charges, i. e., charges to be assessed shippers or consignees who detain the carriers' freight containers beyond an allowable "free time". Maritime brought these actions in the District of Puerto Rico alleging that it was the agent of the carriers for collection of demurrage, that the defendants were shippers or consignees who had detained the carriers' containers beyond the free time, and that the defendants refused to pay the demurrage they had incurred although Maritime had requested payment. Maritime asserted that the failure to pay violated both the tariffs and the Shipping

Acts, and claimed jurisdiction under 28 U.S.C. §§ 1331 and 1337.[1]

The district court dismissed the actions for lack of jurisdiction, following in each case the precedent it had set in *Maritime Service Corp. v. Caceres Johnson Corp.,* Civil No. 74–915 (D.P.R., Feb. 11, 1975). The court had there held that since the tariff requirements of the Shipping Acts were designed to control rather than protect ocean carriers, they afforded carriers no right of action against shippers or consignees for demurrage. Such an action, in the court's view, could only be brought under the contract of afreightment, and could be heard in federal court only in admiralty, 28 U.S.C. § 1333. Since Maritime had refused to allege such a contract or even to assert admiralty jurisdiction, although given ten days to do so, the court had dismissed the complaint. When it followed the same course here, Maritime appealed.

■ Section 1337 provides federal jurisdiction over civil actions "arising under any Act of Congress regulating commerce . . ." without regard to the amount in controversy. Since the Shipping Acts indisputably regulate commerce, the only question is whether this action to recover the demurrage established in the carrier's tariff "arises under" the Acts. Not long ago, we answered this question in the affirmative, expressing the view that where a demurrage action is brought under a Shipping Act tariff, jurisdiction "automatically" attaches under 28 U.S.C. § 1337. *Port of Boston Marine Terminal Assoc. v. Boston Shipping Assoc.,* 420 F.2d 419, 421 (1st Cir.) (dictum), *rev'd on other grounds,* 400 U.S. 62, 91 S.Ct.

---

* Senior Judge of the Eighth Circuit, sitting by designation.

1. Section 1331(a) provides,
   "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
   Section 1337 provides,
   "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints or monopolies."
   Since only one of the cases before us involves more than $10,000, we shall concern ourselves here only with section 1337, which has no amount in controversy requirement. The term, "arises under", has the same meaning in both provisions. *Carlson v. Coca-Cola Co.,* 483 F.2d 279, 280 n. 1 (9th Cir. 1973); *Russo v. Kirby,* 453 F.2d 548, 551 n. 2 (2d Cir. 1971).

203, 27 L.Ed.2d 203 (1970). We now affirm that view, and reverse the judgment below.

For an action to arise under a federal statute, it is sufficient that the statute "creates the cause of action". *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916); *see T. B. Harms Co. v. Eliscu,* 339 F.2d 823, 826–27 (2d Cir. 1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). That standard is satisfied here. By plain implication if not by express provision, the Shipping Acts afford carriers the right to recover the lawful charges specified in the tariffs they are required to file with the Federal Maritime Commission.

Section 18 of the Shipping Act, 46 U.S.C. § 817, requires common carriers by water in interstate commerce to "establish, observe, and enforce just and reasonable rates, fares, charges, classifications and tariffs . . .", and to file tariffs showing all rates and charges with the Federal Maritime Commission. Section 14, 46 U.S.C. § 812, proscribes discrimination by common carriers by water "in the matter of . . . cargo space accommodations or other facilities . . .", *id.* § 812 (Fourth); and section 16, 46 U.S.C. § 815, forbids carriers by water to "make or give any undue or unreasonable preference . . .", *id.* § 815 (First), or to "allow any person to obtain transportation for property at less than the regular rates or charges then established and enforced . . .", *id.* § 815 (Second). Finally, section 2 of the Intercoastal Shipping Act, 46 U.S.C. § 844, imposes similar obligations on carriers in intercoastal commerce by requiring them to file rate schedules with the Commission and forbidding them to charge or receive "a greater or less or different compensation" than that specified in the schedule.

These provisions were modeled on those of the Interstate Commerce Act, and the Supreme Court has said that "Congress intended that the two acts, each in its own field, should have like interpretation, application and effect." *United States Navigation Co. v. Cunard S.S. Co.,* 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932), *quoted in Inter-Island Steam Navigation Co. v. Territory of Hawaii,* 305 U.S. 306, 311 n. 9, 59 S.Ct. 202, 83 L.Ed. 189 (1938). As early as 1915 the Court held that section 6 of the Interstate Commerce Act[2] afforded a carrier the right to recover transportation charges at the full rate specified in an approved tariff, regardless of any agreement to transport at a lower rate. *Louisville & N. R.R. v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); *accord, Turner, Dennis & Lowry Lumber Co. v. Chicago, M. & St. P. Ry.,* 271 U.S. 259, 46 S.Ct. 530, 70 L.Ed. 934 (1926) (demurrage); *Bernstein Bros. Pipe & Mach. Co. v. Denver & R.G.W. R.R.,* 193 F.2d 441 (10th Cir. 1951); *Atchison, T. & S.F. Ry. v. Springer,* 172 F.2d 346 (7th Cir. 1949) (demurrage); *see Locust Cartage Co. v. Transamerica Freight Lines, Inc.,* 430 F.2d 334, 342–43 (1st Cir. 1970). The Court inferred this right to recover from the express requirement that the carrier charge the established rate and no other, and from the underlying congressional policy against unjust discrimination. 237 U.S. at 97–98, 35 S.Ct. 494. The Court's holding, in 1918, that a carrier's suit to enforce the tariff rates arose under the Act, followed naturally. *Louisville & N. R.R. v. Rice,* 247 U.S. 201, 202, 38 S.Ct. 429, 62 L.Ed. 1071 (1918); *accord, Louisville & N. R.R. v. Central Iron Co.,* 265 U.S. 59, 65–67, 44 S.Ct. 441, 68 L.Ed. 900 (1924); *Madler v. Artoe,* 494 F.2d 323 (7th Cir. 1974); *United States v. Mason & Dixon Lines, Inc.,* 222 F.2d 646, 651–52 (6th Cir. 1955).

2. In pertinent part section 6 was phrased then, as it is now, in language nearly identical to that of section 2 of the Intercoastal Shipping Act:

"[N]or shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any other service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." 49 U.S.C. § 6(7).

■ The Shipping Acts also embody a congressional policy against discriminatory rates in a requirement that the carrier enforce the charges established in its tariff, and we think the same inferences should be drawn. As Judge Learned Hand observed in 1932, "Within its own ambit, the same remedies attend a violation of the Shipping Act, as have been accorded under the Interstate Commerce Act." *Prince Line v. American Paper Exports,* 55 F.2d 1053, 1056 (2d Cir. 1932).

There is nothing in the defendants' arguments that would undermine this conclusion. The most strenuous claim is that it is improper to rely on cases finding a right of recovery under the Interstate Commerce Act, since sections 3(2) and 3(3) of that Act, 49 U.S.C. §§ 3(2) & 3(3), make such a recovery explicit. The claim is without merit. The explicit language in the Interstate Commerce Act on which the defendants rely was adopted in successive amendments to the Act in 1927 and 1940, and was designed to deal primarily with the limited problems of reconsignments, the liability of beneficial owners, and the liability of shippers or consignees on delivery to another party on instruction. Act of Sept. 18, 1940, c. 722, tit. I, § 5(d), 54 Stat. 902; Act of Mar. 4, 1927, c. 510, § 1, 44 Stat. 1447. The Supreme Court had construed section 6 as creating a civil remedy well before, at a time when the only basis for such construction was language similar to that of the present Shipping Acts. The fact that Congress added more explicit language to the Interstate Commerce Act in 1927 and 1940 casts not the slightest shadow on the validity of the reasoning that supported the Court's earlier decisions.

We have examined the defendants' other contentions, and find them equally wanting.

*Reversed.*