TRAILER MARINE TRANSPORT
CORPORATION, Plaintiff,

v.

DOLPHIN FORWARDING,
INC., Defendant.

Civ. No. 88–1893 (JAF).

United States District Court,
D. Puerto Rico.

March 18, 1991.

---

Juan Carlos Gorbea, San Juan, P.R., for plaintiff.

Rafael Mayoral–Morales, Ramirez, Latimer & Biaggi, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This action is between two corporations involved in the transportation of goods and involves a dispute over demurrage charges. Before the court is defendant's motion to dismiss based on want of federal jurisdiction. For the reasons outlined below, we deny defendant's motion.

## I. Facts

Plaintiff Trailer Marine Transport Corp. ("TMT") is a Delaware corporation. Plaintiff maintains an office in San Juan, Puerto Rico. On November 17, 1988 plaintiff filed a complaint alleging that defendant Dolphin Forwarding, Inc. ("Dolphin"), a consignee, had incurred demurrage charges of $16,207.00 pursuant to the tariffs published and filed with the Interstate Commerce Commission ("ICC" and "Commission") and had refused payment when requested by TMT. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1337.

On October 15, 1989 we granted the parties' petition for a stay of proceedings. (Docket Document No. 13). The parties informed this court that a jurisdictional issue which might be dispositive of the action was pending before the ICC.[1] We ordered the parties to submit to this court a periodic progress report of the administrative proceedings.

On March 19, 1990, plaintiff submitted to the court a copy of the ICC's decision in *Puerto Rico Freight Systems, Inc. v. Trailer Marine Transport Corporation*, 6 I.C.C.2d 337 (1989), (Docket Document No. 16). The ICC ruled that, under the Interstate Commerce Act ("ICA"), the Commission did, in fact, have jurisdiction over disputes about equipment free time and detention (demurrage) charges published by carriers under tariffs providing joint motor-water transportation between the mainland United States and the carrier terminals in the ports of Puerto Rico. The ICC found that the demurrage charges resulted from the use of the carrier's equipment by the consignee in facilitating the latter's unloading of the cargo and the fact that the consignee utilized the equipment away from the terminal was irrelevant to the jurisdictional issue. The movement of the equipment by the local drayage company was found to be "incidental" to the interstate transaction and considered simply to represent the "completion" of the underlying interstate transportation. Also, the agency analyzed whether the exercise of its jurisdiction in this area would interfere with the jurisdiction of the Puerto Rico Public Service Commission ("PRPSC"), the agency charged with regulating transportation within Puerto Rico, and found that it would not. The I.C.C. invited the PRPSC to comment on the jurisdictional issue and received no comment. The Commission found that the statute which made the ICA inapplicable to Puerto Rico, 48 U.S.C. § 751, has been interpreted by the courts to refer to only intra-island Puerto Rico transportation, and neither gives Puerto Rico the right to regulate interstate commerce nor precludes federal regulation of interstate commerce involving Puerto Rico. Also, the ICC found that exercise of its jurisdiction was consistent with the limitation clause of 49 U.S.C. § 10521(a)(1)(C).[2]

1. More accurately, by October 1989 the ICC had issued an Order reopening proceedings in *Puerto Rico Freight System, Inc. v. Trailer Marine Transport Corporation,* Interstate Commerce Commission No. MC–C–30098, in order to reconsider whether the ICC had jurisdiction to regulate demurrage charges assessed in Puerto

Rico pursuant to joint water-motor tariffs filed with the ICC under 49 U.S.C. § 10703(a)(4)(A).

2. The relevant portion of the general jurisdiction statute states:

(a) Subject to this chapter and other law, the Interstate Commerce Commission has jur-

The Commission, restating the holding of the United States Court of Appeals for the District of Columbia Circuit in *Puerto Rico Maritime Shipping Authority v. I.C.C.*, 645 F.2d 1102 (D.C.Cir.1981), recognized its exclusive jurisdiction in the regulation of transportation between the United States and Puerto Rico in the same way it envisioned its regulation of interstate commerce. The ICC went on to find that "[w]hat is involved here is not transportation within Puerto Rico; rather it is detention related to transportation that begins on the U.S. mainland and ends in Puerto Rico." 6 I.C.C.2d at 342.

Defendant then moved this court to dismiss the action arguing that the ICC erred in its decision with respect to its jurisdiction over disputes relating to demurrage charges. Defendant's argument goes as follows. Plaintiff's equipment is carried outside the port terminals by local drayage carriers. These local carriers are subject to tariffs published and filed with the PRPSC. Because defendant has no control over the activities of the local carrier, when the latter fails to return plaintiff's equipment within the free time allowed by the ICC tariff, the local carrier, and not the defendant, is liable for the demurrage charge. And, since the ICA is not applicable to intra-Puerto Rico transportation, the ICC has no jurisdiction over the local carrier. Therefore, defendant concludes that this court is without jurisdiction to resolve this dispute. For the reasons stated below, we disagree with defendant's position and therefore DENY defendant's motion to dismiss.

## II. Discussion

■ Plaintiff alleges federal court jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1337 (commerce). The relevant portion of section 1337 states that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulat-

ing commerce...." Since 1918, the United States Supreme Court has held that federal district courts have jurisdiction over actions brought by carriers to enforce tariffs published and filed with the ICC. *Louisville & N.R. Co. v. Rice*, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918); *see Turner, Dennis & Lowry Lumber Co. v. Chicago M. & S.P.R. Co.*, 271 U.S. 259, 261, 46 S.Ct. 530, 531, 70 L.Ed. 934 (1926) (demurrage tariff assessed). In *Maritime Service Corp. v. Sweet Brokerage De Puerto Rico, Inc.*, 537 F.2d 560 (1st Cir.1976), the First Circuit affirmed the view of an earlier case and found that an action for demurrage under a tariff filed pursuant to the Shipping and Intercoastal Shipping Acts, 46 U.S.C. §§ 801–842 and §§ 843–848, "arises under" those Acts so as to provide federal jurisdiction under 28 U.S.C. § 1337. *See Port of Boston Marine Terminal Ass'n v. Boston Shipping Ass'n*, 420 F.2d 419 (1st Cir.) (dictum), *rev'd on other grounds*, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970). The court went on to explain that the provisions of the above-named Acts "were modeled on those of the Interstate Commerce Act" and that the Supreme Court has stated that these Acts, each within its own domain, "should have like interpretation, application and effect." *Maritime Service*, 537 F.2d at 562 (quoting *United States Navigation Co. v. Cunard S.S. Co.*, 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932)).

■ It is clear therefore that federal courts have jurisdiction under section 1337 over claims by carriers whose tariffs are published and filed with the ICC. In *Puerto Rico Maritime Shipping Authority v. I.C.C.*, 645 F.2d 1102 (D.C.Cir.1981), the United States Court of Appeals For the District of Columbia Circuit held that the ICC, and not the Federal Maritime Commission, had jurisdiction over tariffs naming joint rates entered into by motor and water carriers operating between the United

isdiction over transportation by motor vehicle and the procurement of that transportation, except by a freight forwarder (other than a household goods freight forwarder), to the extent that passengers, property, or both, are transported by motor carrier—

(1) between a place in—
(C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States.

States mainland and Puerto Rico. The plaintiff has alleged that such a tariff is at issue here. Defendant does not dispute this allegation. Therefore, since this court has jurisdiction to enforce tariffs published and filed with the ICC, the parties are properly before this court.

Defendant's argument as to why this court lacks jurisdiction is without merit. Demurrage charges arise from the relationship between the carrier and the *consignee*. Demurrage charges have been characterized as "an extension of ocean freight charges," *Gulf Puerto Rico Lines, Inc. v. Associated Food Co.*, 366 F.Supp. 631 (D.P. R.1973), and

> where there has been an excess of lay days (free days) over those stipulated, the consignee is liable to pay demurrage for those excess days regardless of what brought about the delay except (1) where a specific provision of a charter party exonerates the consignee from liability for demurrage; (2) where the delay is the fault of the carrier or those for whom he is responsible; or (3) where the delay is caused by a vis major.

*Pennsylvania Railroad Co. v. Moore–McCormack Lines, Inc.*, 370 F.2d 430, 432 (2d Cir.1966); *Gulf Puerto Rico Lines*, 366 F.Supp. at 635–36. Here, defendant appears to concede that it is the local drayage company who is at fault for failure to return the equipment within the free period. This local carrier was hired by the consignee. As none of the three exceptions are applicable, the consignee must be held liable.

If this court were to adopt defendant's theory, the result would almost assuredly result in major disruptions to interstate transportation and increased costs for goods destined for Puerto Rico. As the ICC correctly pointed out in its opinion, 6 I.C.C.2d at 338–39, if the ICC does not assert jurisdiction over demurrage disputes, carriers will either refuse to allow consignees the use of carrier equipment to facilitate unloading or they will require that consignees enter into separate demurrage contracts when the latter elect to use the carrier's equipment to effect delivery.

In either of these two scenarios the cost of shipping will be increased and the organized flow of cargo in interstate commerce would be affected. On the other hand, since the consignee enters into a contract with the drayage company to haul the consignee's delivery from the port, it would be within their discretion to make provision for demurrage charges for which the consignee may become liable due to the failure of the drayman to return carrier's equipment. Balancing the equities, we think that both logic and common sense require that we reject defendant's position and proceed to determine the merits of plaintiff's claim.

### III. Conclusion

For the foregoing reasons, we DENY defendant's motion to dismiss. The parties shall report within ten (10) days whether the matter will be settled. If not, we will set the case for trial forthwith.

IT IS SO ORDERED.