Robert SMART and Marilyn Smart, his wife, for themselves and on behalf of all Members of the Class of First Federal Savings & Loan Association of Detroit, Mortgagors from 1973 to 1979, Plaintiffs,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF DETROIT, Defendant, et al. (see fn.* for 21 other titles).

Civ. Nos. 79-74483, 79-74646, 79-74804, 80-70101, 80-70143, 80-70169, 80-70246, 80-70269, 80-71370, 80-71530, 80-71536, 80-71559, 80-71596, 80-71799, 80-71816, 80-71863, 80-72015, 80-72028, 80-72269, 80-72270, 80-72336 and 80-72417.

United States District Court,
E. D. Michigan, S. D.

Sept. 15, 1980.

it is reasonably necessary to rely on age as an indicator of inability to perform adequately.

* Mandel v. First Federal Savings & Loan Assoc. of Detroit, 79-74646; First Federal Savings & Loan Assoc. of Detroit v. Lustig, 79-74804; First Federal Savings & Loan Assoc. of Lenawee County v. Fischer, 80-70101; Fischer v. First Federal Savings & Loan Assoc. of Lenawee County, 80-70143; Cross v. Taylor, 80-70169; Grant v. First Federal Savings & Loan Assoc. of Detroit, 80-70246; Lustig v. First Federal Savings & Loan Assoc. of Detroit, 80-70269; First Federal Savings & Loan Assoc. of Detroit v. Detroit Bond & Mortgage Investment Co., 80-71370; Jones v. First Federal Savings & Loan Assoc. of Detroit, 80-71530; Darr v. First Federal Savings & Loan Assoc. of Detroit, 80-71536; Alcock v. First Federal Savings & Loan Assoc. of Detroit, 80-71559; Phil-AM Realty Inc. v. Detroit Federal Savings & Loan Assoc., 80-71596; Berkley v. First Federal Savings & Loan Assoc. of Detroit, 80-71799; Dunn v. First Federal Savings & Loan Assoc. of Detroit, 80-71816; Morris v. First Fed. Sav. & Loan Assoc. of Detroit, 80-71863; Lindsay v. First Fed. Sav. & Loan Assoc. of Detroit, 80-72015; Detroit Federal Savings & Loan Assoc. v. Sandweiss, 80-72028; Sandweiss v. Detroit Federal Savings & Loan Assoc., 80-72269; Sheldon Investment Co. v. Detroit Federal Savings & Loan Assoc., 80-72270; Williams v. First Federal Savings & Loan Assoc. of Detroit, 80-72336, and Howell v. Colonial Federal Savings & Loan Assoc. of Grosse Pointe Woods, 80-72417.

**1148**

Michael J. McGivney, Brighton, Mich., for plaintiffs in No. 79–74483.

David M. Hayes, Detroit, Mich., for First Federal Savings & Loan Association of Detroit.

Paul M. Mandel, Pontiac, Mich., for plaintiffs in No. 79–74646.

Roger K. Timm, Detroit, Mich., for First Federal Savings & Loan Association of Detroit, and First Federal Savings & Loan Association of Lenawee County.

Paul A. Longton, Wyandotte, Mich., for defendants in No. 79–74804 and plaintiffs in No. 80–70269.

Harvey A. Koselka, Adrian, Mich., for defendants in No. 80–70101 and plaintiff in No. 80–70143.

James B. Arnold, Troy, Mich., for plaintiffs in No. 80–70169.

Robert F. Potere, Rochester, Mich., for the Taylors.

William E. Clark, Jr., Southfield, Mich., for plaintiffs in No. 80–70246.

Andree DuFresne, Detroit, Mich., for plaintiffs in No. 80–70269.

Edward M. Ranger, Detroit, Mich., for Trustees, Walter Jones, Sandra Jones, Samuel and Rosemarie Chiado, and plaintiffs in Nos. 80–71370, 80–71530, 80–71816 and 80–72417.

Owen J. Cummings, Livonia, Mich., for plaintiffs in No. 80–71536.

Donald M. Churilla, Sterling Heights, Mich., for plaintiffs in No. 80–71559.

Imants M. Minka, Carl G. Becker & Associates, Southfield, Mich., for plaintiffs in No. 80–71596.

Leslie S. Chernikov, Detroit, Mich., for plaintiffs in No. 80–71799.

William M. Schlecte, Ann Arbor, Mich., for plaintiffs in No. 80–71863.

John A. Dolan, Mt. Clemens, Mich., for plaintiffs in No. 80–72015.

Robert S. Bolton, Mark T. Peters, Butzel, Keidan, Simon, Myers & Graham, Detroit, Mich., for Detroit Federal Savings & Loan Association and defendants in No. 80–72269.

Erwin B. Ellmann, Southfield, Mich., for Sheldon and Miriam Sandweiss and Sheldon Investment Co.

John C. Huget, Sterling Heights, Mich., for John and Norma Croat.

Philip A. Jaffe, Southfield, Mich., for BKG Management II.

Robert V. Parenti, Lake Orion, Mich., for plaintiffs in No. 80–72336.

H. Hudson Mead, Detroit, Mich., for defendant in No. 80–72417.

Harvey Simon, Federal Home Loan Bank Board, Washington, D. C., Lawrence J. Stockler, Detroit, Mich., Gregory L. McClelland, Harry G. Iwasko, Jr., Asst. Atty. Gen., Lansing, Mich., for amicus curiae.

## OPINION

GUY, District Judge.

Pursuant to Local Court Rule XXIV, which governs the assignment of similar or

related cases in this district, this court has been assigned twenty–two cases involving the validity and enforceability of the "due on sale" clauses [1] contained in certain mortgage agreements commonly used by federal savings and loan associations. All of the

1. In general, "due on sale" clauses provide that in the event property encumbered by a mortgage containing one of these clauses is sold or otherwise transferred without the prior written consent of the mortgagee, the mortgagee can declare immediately due and owing the entire mortgage balance. *See generally, Occidental Savings and Loan Association v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980); Bartke & Tagaropulos, *Michigan's Looking Glass World of Due on Sale Clauses*, 24 Wayne L.Rev. 971 (1978) [hereinafter referred to as "Looking Glass"].

The due on sale clauses in these mortgages provide generally as follows:

Transfer of the Property: Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase. Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17 and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

"Due on sale" clauses are not new, albeit litigation concerning them is of relatively recent vintage. For example, the first volume of the Michigan Supreme Court Reports includes a case involving a mortgage containing a due on sale clause. *Campau v. Chene*, 1 Mich.

400 (1850). They were apparently originally included in mortgages "as a mere additional precaution to protect the security interests of the lenders." *"Looking Glass,"* supra, n.1 at 979. They were rarely invoked, however, and when they were the justification advanced was that the prospective purchaser might increase the risk of default.

In the 1960's, however, interest rates that had historically remained relatively constant began to rise and fluctuate dramatically. As a result, lending institutions found themselves in the unenviable position of being locked into long–term, low return investments in mortgages while concurrently being required to pay higher interest rates to obtain funds. As a consequence, lenders began to draft differently worded lending instruments and, in addition, to invoke due on sale clauses as a method of turning over their investment portfolios and increasing their earning capacities. *Id.* at 979. This caused "the economic interests of the lenders [to clash] head on with those of the borrowers. This conflict translated itself, as do so many other economic and social clashes, into lawsuits." *Id.*

Initially, most of the litigation proceeded in state courts, with the exception of a few "Truth in Lending" Act cases, 15 U.S.C. §§ 1631–45, that found their way into federal court. *See, "Looking Glass,"* supra, n.1, and text accompanying notes 97–117; Anno., 34 A.L.R.Fed. 467 (1977). The state courts reached different conclusions relative to the validity of such clauses, however, with the concensus being that they were not invalid per se but in many instances unenforceable in the particular fact situation before the court. *See generally, Occidental,* supra, n.1 and the cases collected in Appendix A of that opinion.

Three significant events occurred in the late 1970's, however. First, interest rates skyrocketed. Second, in 1976, the Federal Home Loan Bank Board promulgated 12 C.F.R. § 545.6–11, which specifically authorized the use of due on sale clauses in mortgages drafted by federal savings and loan institutions. And, third, the Michigan Court of Appeals ruled in *Nichols v. Ann Arbor Federal Savings and Loan Association*, 73 Mich.App. 163, 250 N.W.2d 804 (1977), that such clauses, albeit not invalid per se, were unenforceable *if* the sole basis for invoking the clause was the institution's "interest in maintaining its portfolio at current interest rates . . . ." *Id.* at 174, 250 N.W.2d 804. Notwithstanding the *Nichols'* decision, however, federal savings and loan associations began to enforce the clause regularly in 1979. This precipitated all of the suits before this court.

cases seek declaratory judgment relative to such clauses. Of the twenty–two cases filed, eighteen have been instituted by mortgagors and four have been commenced by federal savings and loan associations (hereinafter referred to as federal associations). Fifteen of the eighteen cases filed by mortgagors were started in state court and subsequently removed to this court pursuant to 28 U.S.C. § 1441. The other three mortgagor suits and the four mortgagee actions initially were filed as declaratory judgment actions pursuant to the provisions of 28 U.S.C. § 2201 in this court.

All of the cases initially filed in state court challenge the validity and exercisability of due on sale clauses either under real property law theories or on contractual grounds, or both. More specifically, the state complaints assert that due on sale clauses are unreasonable restraints on alienation and that they are therefore unenforceable. Although not all of the complaints specifically mention it, it is clear that the mortgagors' substantive claims are for the most part an outgrowth of a decision of the Michigan Court of Appeals in *Nichols v. Ann Arbor Federal Savings and Loan Association* and *Kempf v. Ann Arbor Federal Savings and Loan Association*, 73 Mich.App. 163, 250 N.W.2d 804 (1977), in which the court held that due on sale clauses were restraints on the ability of mortgagors to alienate property and that unless the lender could demonstrate that resort to such clauses was reasonably necessary to protect the lender against the impairment of its security or the risk of default, the clause was invalid and unenforceable.[2]

Several of the complaints also suggest that, as a matter of fundamental contract law, the specific type of sales arrangements made to dispose of property subject to mortgages containing due on sale clauses were excluded from the terms of the clause.

Typical of such allegations are those found in *Cross v. Taylor*, No. 80–70169. In *Cross*, plaintiffs allege that the executory land contract they entered into with their prospective purchasers created a "lien or encumbrance subordinate to [the] mortgage and, therefore, is not violative of [the due on sale clause]." Complaint at ¶ 9.

Rather than answer the cases in state court, the federal associations chose to remove them to United States District Court pursuant to 28 U.S.C. § 1441(b). They justified their removal in all of the cases on the ground that this court had original federal question jurisdiction over the cases under 28 U.S.C. § 1331 and 28 U.S.C. § 1337, asserting that "[b]y virtue of the fact that plaintiffs' Complaint[s] rest ... on federal law as expressed in the [Home Owners' Loan Act of 1933, 12 U.S.C. § 1461, et seq.,] which preempts any state regulation of the lending practices of federal savings and loan associations, the complaint[s] ... present ... federal question[s] ...."

The associations' position on the merits in these cases is that applicable federal regulations authorize the use of due on sale clauses in mortgages and that such regulations preempt state law to the contrary. Specifically, the associations point to a regulation which became effective on June 8, 1976, which provides in part as follows:

A federal association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instruments whereby the association may, at its option, declare immediately due and payable all of the sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (6) of this section ... exercise by an association of

---

**2.** It is important to note that while the headnotes in *Nichols* suggests that issues raised in that litigation parallel those that confront this court, the *Nichols* court did not have the question of federal preemption, infra, before it since the original mortgage loan granted in that case was made by a Michigan mortgage corporation

"and the preemptive effect of the [Home Owners' Loan Act of 1933] and Bank Board regulations therefore [was] not ... raised by the assignee–defendant association." Brief of the Federal Home Loan Bank Board as Amicus Curiae at 26 n.25.

such an acceleration option (hereafter called a due–on–sale clause) shall be governed exclusively by the terms of the contract between the association and the borrower . . . .

12 C.F.R. § 545.6–11(f). Several cases have found that this regulation preempts all state law inconsistent therewith, most notably *Glendale Federal Savings and Loan Association v. Fox*, 459 F.Supp. 903 (C.D.Cal. 1978).

Shortly after the first set of cases was removed to this court, two motions to remand were filed in which plaintiffs challenged the proposition that their claims arose under federal law. The motions to remand asserted that under the clear weight of authority their claims did not "arise under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331(a) and 28 U.S.C. § 1337, and asserted that any federal questions presented by their cases were raised merely as a defense to state created causes of action.

Pursuant to the filing of the motions to remand, a hearing was set in *Mandel v. First Federal Savings and Loan Association of Detroit*, No. 79–74646, and *Jones v. First Federal Savings and Loan Association of Detroit*, No. 80–71530. Following oral arguments, the court took the remand motions under advisement.[3]

After reviewing all of the materials filed in connection with the motions to remand and the oral arguments of counsel on the question, the court has concluded that it does not have subject matter jurisdiction over any of the cases initially filed in state court and that it must remand all of them back to state court as a result of their having been improvidently removed.

## REMAND

All of the cases initially started in state court were removed to this court pursuant to 28 U.S.C. § 1441, which provides as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant of the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Subsection (b) sets forth the types of cases that may be removed:

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Since there is no diversity of citizenship between the parties, the question whether these cases were properly removed must be decided on the basis of whether they are within the original jurisdiction of this court under 28 U.S.C. § 1331 (federal question jurisdiction) or 28 U.S.C. § 1337 (cases arising under federal laws regulating commerce). Part (a) of § 1331 provides:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

Subsection (a) of § 1337 provides:

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and mo-

---

3. On May 2, 1980, the court had established a motion schedule for all of the cases assigned to it under Local Court Rule XXIV to give all parties involved an opportunity to be heard on these issues.

nopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 20(11) of part I of the Interstate Commerce Act (49 U.S.C. 20(11)) or section 219 of part II of such Act (49 U.S.C. 319), only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

These cases all involve mortgage notes substantially exceeding $10,000. Consequently, the only question the court must resolve is whether these cases "arise" under federal law. In that regard, the court would note that it is well–settled that the "arising under" language in § 1337 has been given the same meaning as the identical language used in § 1331. *See, e. g., Maritime Service Corp. v. Sweet Brokerage De Puerto Rico, Inc.,* 537 F.2d 560 (1st Cir. 1976); *Yancoskie v. Delaware River Port Authority,* 528 F.2d 722 (3rd Cir. 1975); *Peyton v. Railway Express Agency, Inc.,* 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942) (discussing the predecessor to § 1337). As a result, cases decided under either section can be used interchangeably.

Although there is considerable authority on the issue whether a case arises under the Constitution, treaties, or laws of the United States, there is no litmus paper test that has evolved to determine whether a federal question has been raised in a particular case.

One of the earliest Supreme Court cases that discussed the phrase "arising under" was *Osborn v. Bank of the United States,* 9 Wheat 738, 22 U.S. 738, 6 L.Ed. 204 (1824). The Court in *Osborn* made it quite clear that if *Congress* chose to do so, it could, consistent with Article III of the Constitution, extend federal court jurisdiction to any case in which federal law was involved, whether raised in the complaint or by way of the answer. The Supreme Court has not followed such an expansionistic view of federal jurisdiction itself, however, in construing "arising under" language in jurisdictional statutes. As Judge Friendly observed, "the Supreme Court has long given a narrower meaning to the 'arising under'

language in statutes defining the jurisdiction of the lower federal courts," *T. B. Harms Co. v. Eliscu,* 339 F.2d 823, 825 (2d Cir. 1964), than would have been suggested by the *Osborn* decision.

Similarly, Congress has declined on several occasions to expand the jurisdiction of federal courts. In 1971, for example, a bill was introduced in Congress that would have allowed an action to be removed from state court whenever a "substantial defense" arising under the Constitution, laws, or treaties of the United States was asserted. The avowed purpose of the proposed amendment was "to permit removal on the basis of a Federal defense or counterclaim," the rationale being that the "need for a Federal forum is as great for the defendant who relies on Federal law to defeat a State–created claim as it is for the plaintiff whose claim is derived from Federal law." Remarks of Senator Burdick, 117 Cong.Rec. 15089 (1971). Conversely, Congress has chosen on occasion to limit federal jurisdiction in this particular area. For instance, it enacted 28 U.S.C. § 1349 in part to overrule the *Osborn* case and provide that district courts do not have jurisdiction over cases simply because a corporation incorporated under an Act of Congress (such as a federal savings and loan association) is a party.

In a consistent line of cases dating back to at least 1908, the Supreme Court has held that a case arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [the laws of the United States]." *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Moreover, such a claim must be presented "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Id.* at 152, 29 S.Ct. at 43.

In 1916, Justice Holmes attempted to explain the "arising under" language and its application in these words: "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). It soon

came to be realized, however, that the Holmes "creation test" was "more useful for inclusion than for the exclusion [of cases]." *T. B. Harms, supra,* at 827. In 1936, Justice Cardozo endeavored to bring some additional clarity to the problem by observing that a case is embraced by the federal question statute if "a right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). He then added:

> The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. . . . A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto . . . and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. . . . Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Id.* at 112–13, 57 S.Ct. at 97. *See also, Phillips Petroleum Co. v. Texaco Inc.,* 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974), where the Supreme Court reaffirmed these principles. When those general principles are applied to the cases at bar that were removed from state court, this court concludes that it lacks subject matter jurisdiction as will be more fully explained herein.

A review of the complaints filed in state court reveals a noticeable absence of any reference whatsoever to federal law. In fact, on their faces, these complaints all rely exclusively on state law. Thus, to borrow language from *Louisville & Nashville Railroad Co., supra,* "plaintiff[s'] statement of [their] own cause of action shows that [they are not] based upon [the laws of the United States]." 211 U.S. at 152, 29 S.Ct. at 43.

Second (as the briefs that have been filed with this court pursuant to its May 2, 1980 Order as well as the many state cases that have been decided across the country demonstrate), a right or immunity created by the Constitution and laws of the United States is not an element, let alone an essential one, of plaintiffs' cause of action. *Gully, supra,* 299 U.S. at 112, 57 S.Ct. at 97. Indeed, in order to make out a prima facie case in Michigan under the reasoning of the *Nichols* decision, plaintiffs would merely have to prove that their mortgages contained due on sale clauses, that they attempted to divest themselves of the property in one way or another, and that the clause was then invoked by the mortgagee. The burden would then shift to the lender to establish either that the transfer would have resulted in an impairment of its security or, presumably that plaintiffs had failed to state a claim upon which relief could be granted because of the doctrine of federal preemption. Therefore, neither the "creation test" nor the *Gully* "arising under" test have been satisfied.

It is also clear that defendants cannot create removal jurisdiction simply by raising a federal question in the petition for removal. The federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Phillips Petroleum Co., supra,* 415 U.S. at 127–28, 94 S.Ct. at 1003–04, quoting *Gully, supra.* In short, neither the complaints filed in state court nor the assertions in the removal petitions provide a basis for subject matter jurisdiction.

That brings the court to the question whether there is a difference in kind—or, said another way, a distinction with a difference—between merely raising a federal defense to a state cause of action and contending that state law has been preempted. The Supreme Court has never squarely confronted this issue, and the lower courts have reached different conclusions.

On the one hand, such cases as *Home Federal Savings and Loan Association v. Insurance Department of Iowa,* 571 F.2d 423 (8th Cir. 1978); *Washington v. Ameri-*

can League of Professional Baseball Clubs, 460 F.2d 654 (9th Cir. 1972); *Johnson v. First Federal Savings and Loan Association of Detroit,* 418 F.Supp. 1106 (E.D.Mich. 1976); *Savings and Loan League v. Francis,* (E.D.Mich. May 8, 1980); and *Clark v. First Federal Savings & Loan Association of Lenawee County,* Civil Action No. 80–72492 (E.D.Mich. Aug. 19, 1980), have specifically held that federal preemption is a matter of defense to a state law claim and is therefore an inadequate base upon which federal question jurisdiction can rest. On the other, the Ninth Circuit in *Meyers v. Beverly Hills Federal Savings & Loan Association,* 499 F.2d 1145 (9th Cir. 1974); *Rath Packing Co. v. Becker,* 530 F.2d 1295 (9th Cir. 1975), aff'd sub nom. by order *Stein v. Conference of Federal Savings and Loan Associations,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980); the Tenth Circuit in *North Davis Bank v. First National Bank of Layton,* 457 F.2d 820 (10th Cir. 1972), and at least two district courts, *Rettig v. Arlington Heights Federal Savings & Loan Association,* 405 F.Supp. 819 (N.D.Ill.1975), and *First Federal Savings & Loan Association of Jackson County v. First Federal Savings & Loan of Huntsville,* 446 F.Supp. 210 (N.D.Ala.1978), have ruled that federal preemption, either in the context of a removed case or for purposes of determining whether a court has declaratory judgment jurisdiction, is capable of providing a basis for federal jurisdiction.

In addition, in the specific context of the instant cases–namely, "due on sale" controversies–several federal district courts have disagreed on the question whether federal question jurisdiction is present. The courts in *California v. Glendale Federal Savings & Loan Association,* 475 F.Supp. 728 (C.D.Cal. 1979); *Kirkland v. Fidelity Federal Savings and Loan Association of Jacksonville,* (M.D. Fla. May 16, 1980); and *Albrecht v. Great Lakes Federal Savings and Loan Association* (unreported memorandum opinion and order decided on December 30, 1978, by Judge Harvey in this district), have held that federal preemption is only a defense and cannot form the basis for removal jurisdiction.

In *Bailey v. First Federal Savings and Loan Association of Ottawa,* 467 F.Supp. 1139 (C.D.Ill.1979), another "due on sale" case, however, a district court reached the opposite conclusion and held that the prospect of federal preemption did present a federal question under 28 U.S.C. § 1331 and ruled that removal was therefore proper. Following the rationale in *Bailey,* a judge in the Middle District of Florida, in a case decided seven days after *Kirkland, supra,* held that a "due on sale" controversy had been properly removed to federal court. *Price v. Florida Savings and Loan Association,* (M.D.Fla. May 23, 1980).

After carefully examining the cases on both sides of this controversial issue, the court has thus concluded that it must reject the line of reasoning contained in those cases that have upheld removal jurisdiction on the basis of federal preemption. The principal problem with those cases that have held that federal preemption gives rise to jurisdiction is that they merely assert, but do not make an effort to justify a distinction between raising a federal defense, which clearly does not give rise to removal jurisdiction, and raising federal preemption, which they indicate does. In other words, no effort is made in any of the cases to reason through the distinction, and this court cannot divine a rationale to support such a distinction.

In *Bailey, supra,* for example, the case cited by the federal associations in every removal petition, the court, after finding that state law had been preempted, states:

This case is to be distinguished from one in which a federal question is asserted as a defense, or by plaintiff in anticipation of a defense. Such a case is not properly removable, nor would jurisdiction lie where [sic] the case brought initially in a United States district court. *Gully, supra.* When the complaint discloses, however, as it does here, a controversy in an area in which federal law has pre-empted state law, a federal question is necessarily implicit in the complaint.... Because the regulation of

federal savings and loan associations is such a pre-empted area, the complaint necessarily presents a federal question
. . . .

*Id.* at 1141–42 (citations omitted). For support, the *Bailey* court cited *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists and Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1965). In *Avco*, the Court was confronted with the question whether a complaint purporting to sound in contract was nevertheless removable to federal court because it involved a collective bargaining agreement in an industry affecting interstate commerce. The court held that such a suit was properly removable since the claim plaintiff had stated arose under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

The differences between *Avco* and the cases at bar, however, are significant. In *Avco*, the Court was dealing with a statute that read as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Further, the Supreme Court had previously unequivocally held in *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and *Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), that federal substantive law was to be applied to cases brought under § 301. The court thus had

little difficulty in concluding that the case did not arise under state contract law but rather was an action arising out of a dispute involving a collective bargaining agreement and thus was one arising under the laws of the United States.

Unlike the *Avco* case, in which the facts alleged in the plaintiff's complaint were sufficient to support a federal cause of action, albeit without reference to the federal statutes and laws, the cases at bar arise directly under and involve state law principles, to wit: invocation of the due on sale clauses violate real property and contractual law concepts in the State of Michigan. The fact that a federal regulation *acknowledged the propriety* of federal associations including due on sale clauses in mortgages,[4] however, does not transform the situation into one in which there is only a federal basis for the claim; rather, it constitutes a straight-forward defense to claims that clearly have their genesis in state law and which should be resolved by the application of state law principles.[5]

Similarly, the other cases cited by the federal associations also fail to articulate the reasons for drawing a distinction between federal preemption and federal defenses for purposes of determining whether there is removal jurisdiction. *Rettig, supra,* simply posits that "[w]here federal substantive law is found to be controlling . . . by reason of . . . federal preemption, the suit is properly removable." *Id.* at 823. The court offers no additional explanation. In *First Federal Savings and Loan Association of Jackson County v. First Federal Savings and Loan Association of Huntsville, supra,* the court merely said that because it appeared clear that there was federal preemp-

---

**4.** The language of the federal regulation is significant (see text, *supra*, at ——). It states "a federal association continues to have the power to include, as a matter of contract between it and the borrower . . ." a due on sale clause. The regulation then concludes by stating, ". . . exercise by an association of . . . a due on sale clause shall be governed exclusively by the terms of the contract between the association and the borrower. . . ." Thus, the regulation only indicated approval to what was already

being done. It was clearly not a *grant* of initial authority. It also makes clear that the contract terms between the parties shall control. These are contract terms of a contract made in Michigan by and between citizens of Michigan.

**5.** The acknowledgement that state law principles should control is not necessarily intended by this court to be an endorsement of the result reached by the Michigan Court of Appeals in *Nichols, supra.*

tion, "[r]emoval was therefore proper . . . ." *Id.* at 212. Again, no explanation is offered. In summary,

> [t]he difficulty with these cases is that they make an irrelevant distinction between the ordinary federal question defense (where defendant asserts that a state statute relied upon by plaintiffs is in conflict with federal constitutional or statutory law) and the federal preemption defense (where defendant asserts that federal law so dominates an entire body of regulation that the facts alleged by plaintiff necessarily cannot present a state cause of action). Under the first situation there would be no removal jurisdiction but under the second there would be removal jurisdiction according to these cases. The court can see no rationale for making this distinction and it declines to do so.

*Johnson, supra,* at 1109.

On the other hand, the cases that have refused to draw such a distinction and have found that the assertion of a federal preemption defense does not give rise to removal jurisdiction appear to be better reasoned and are supported by an unbroken line of Supreme Court precedent. First, they take cognizance of the well recognized rule that the controversy must be disclosed upon the face of the complaint, a principle dating back at least as far as 1894. *Tennessee v. Union and Planters' Bank,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). *See also, La Chemise Lacoste v. Alligator Co., Inc.,* 506 F.2d 339, 344 (3d Cir. 1974). Second, they reject the notion that any federal laws necessarily brought into play by a particular case can be judicially noticed, a notion rejected by the Supreme Court at least as early as 1901. *Arkansas v. Kansas and Texas Coal Co.,* 183 U.S. 185, 188, 22 S.Ct. 47, 48, 46 L.Ed. 144 (1901). Third, they recognize that "[n]ot every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." *Gully, supra,* 299 U.S. at 115, 57 S.Ct. at 98. Fourth, they properly apply the principle that federal statutory or regulatory provisions that do not create a right of action but simply function as a defense

to such a suit do not vest federal courts with subject matter jurisdiction. *See, Phillips Petroleum Co., supra,* 415 U.S. at 128–29, 94 S.Ct. at 1004. Finally, they recognize that "the party who brings a suit is master to decide what law he will rely upon," *The Fair v. Kohler Die and Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), and is "free to ignore the federal question and pitch his claim on the state ground." 1A Moore's *Federal Practice,* § 0.160.

In all of the removed cases at bar, plaintiffs have chosen to base their complaints on state, not federal, law. They assert traditional state law claims that do not lose their character as state created causes of action simply because federal regulations sanction, *after the fact,* the very thing of which plaintiffs' complain. *Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961).

Given the aforementioned authority from the United States Supreme Court, the decisions of the lower courts which have found that preemption does not give rise to federal jurisdiction, Congress' reluctance to broaden 28 U.S.C. § 1331 or 28 U.S.C. § 1337 to vest district courts with jurisdiction over matters where federal laws are necessarily brought into play or where a "substantial federal defense" is raised, and the fact that defendants are protected against improper consideration of their defense of federal preemption by the ultimate right to review in the United States Supreme Court, the court finds that these cases were improvidently removed and must be remanded to state court pursuant to the provisions of 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

## DECLARATORY JUDGMENT ACTIONS

Four declaratory judgment actions have also been filed by federal associations pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Initially, it is important to understand the nature of the relief sought in these cases. In every case, the associa-

tions have asked the court to declare that federal regulations preempt and exclusively govern the validity and exercisability of due on sale clauses and to find that the actions these institutions took relative to invoking due on sale clauses were valid. It is alleged that the actions arise under the Supremacy Clause of the United States Constitution and under the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq.

Given the court's decision that there is no federal jurisdictional basis for identical cases removed from state court, the question this court must ask and answer initially is whether it has subject matter jurisdiction over these lender declaratory judgment actions. Federal district courts have an affirmative obligation to determine whether they have subject matter jurisdiction over every case, whether the question is raised by the parties or by the court on its own motion. *E. g., City of Kenosha v. Bruno*, 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973); *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975); *Mansfield Coldwater & Lake Michigan Railroad v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); and *Rauch v. Day and Night Manufacturing Corp.*, 576 F.2d 697, 699 n.1 (6th Cir. 1978). For the reasons below, the court finds that it does not have jurisdiction over these lender initiated declaratory judgment actions.

The Declaratory Judgment Act provides that when a case of "actual controversy within [the federal court's] jurisdiction" is filed, a district court may declare the rights of the litigants. It is beyond dispute, however, that the Act is procedural only, conferring no federal jurisdiction in and of itself. *Aetna Life Insurance Company of Hartford v. Haworth*, 300 U.S. 227, 37 S.Ct. 461, 81 L.Ed. 617 (1937). Thus, it has repeatedly been held that for a district court to declare the rights of interested parties, an independent source of jurisdiction, such as diversity jurisdiction or federal question jurisdiction, must be present. *E. g., Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). As explained by Justice Frankfurter in *Skelly*, the Declara-

tory Judgment Act was not intended to expand or otherwise modify the jurisdiction of district courts; rather, it merely enlarged the range of permissible remedies open to such courts. As a result, lower courts are required to assess such complaints in terms of the underlying actions that might have been brought in lieu of the declaratory action in order to determine whether jurisdiction attaches. Wright, *Handbook of the Law of Federal Courts*, § 18, at 71 (3rd ed. 1976).

In these instant cases, several avenues were open to the parties for judicial resolution of this controversy. One possibility would have been for the federal associations to exercise their options to declare the entire mortgage balance due and owing and then to file foreclosure actions in state court against the mortgagors who would not or could not pay the accelerated balance. In that event, the federal associations' cases would have been founded upon the contract between the parties and real property law—traditional state law claims. In response, the borrowers would most likely have retreated to the *Nichols* decision and asserted that the exercise of due on sale clauses absent some reasonable apprehension relative to impairment of security was an invalid restraint on alienation. At that point, the associations would raise the issue of federal preemption. Clearly, however, such cases, in the absence of diversity of citizenship, would not be within the original or removal jurisdiction of this court.

A second possibility would have been for the mortgagors, upon receiving notice that their due on sale clauses had been invoked, to file actions seeking to enjoin the associations from utilizing the clauses and asking that a court of competent jurisdiction declare such clauses invalid. In fact, at least fifteen such actions were filed and subsequently removed to this court. But, as explained above, all of those cases arose out of state law and they were therefore not properly removed.

A third approach, which was the one utilized, was for the associations to file declaratory judgment actions in federal court.

For the reasons set forth below, however, the court finds that such an action does not arise under federal law and, as a result, must be dismissed.

Legally, although not factually, the cases at bar are not unlike *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). In *Wycoff*, a company in the business of transporting motion picture films and newsreels to various locations in Utah brought a declaratory judgment action seeking a ruling that it was engaged in interstate commerce and that as a result any attempt by the State of Utah to regulate its activities was invalid in that the regulation of interstate commerce was a field Congress had preempted under the Motor Carrier Act, 49 U.S.C. § 301 *et seq. Buck v. Kuykendall*, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623 (1925). The Court held that the suit could not be entertained for other reasons, but it strongly suggested *in dicta* that such a suit would not be within the federal question jurisdiction of a federal district court.

Justice Jackson, writing for the Court, explained:

> In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal–question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal–law defense before the state court begins the case under state law. *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed.2d 511; *The Fair v. Kohler Die & Speciality Co.*, 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716; *Taylor v. Anderson*, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218.

344 U.S. at 248, 73 S.Ct. at 242 (footnote omitted).

Comparably, in the cases at bar, the federal associations are seeking to establish the defense of federal preemption against causes of action founded upon state law through the vehicle of a declaratory judgment action. They have attempted to obtain a federal court declaration that preemption by virtue of federal regulations bars or renders meritless such suits. Again, however, the actions which the declaratory defendants have filed do not arise under federal law and the expedient of raising the question of preemption in a declaratory complaint does not change the character of the suits from actions arising under state law.

There are also a number of similarities between the cases before this court and the Supreme Court's decisions in *Skelly, supra*, and *Phillips, supra*. In *Skelly*, Justice Frankfurter observed that if the declaratory plaintiff had brought an action for specific performance or for damages instead of for declaratory relief the suit would have been based on state contract law. Therefore, he and the majority concluded, "[w]hatever federal claim [the declaratory plaintiff] would have been able to urge would in any event be injected into the case only in anticipation of a defense to be asserted by [the declaratory defendants]." *Skelly, supra*, 339 U.S. at 672, 70 S.Ct. at 879. Accordingly, absent another basis for federal

jurisdiction, the case had to be dismissed (as to that defendant).

In the instant cases, a suit by the associations to obtain a judgment for the accelerated balance or for foreclosure would "arise" under the state law governing contracts and real property, respectively. The federal claim they assert in their declaratory complaints, however, only enters the case by virtue of the expectation that the declaratory defendants would raise the prospect of the doctrine of unreasonable restraints on alienation, which defense the federal associations would then contend is precluded as a result of the doctrine of federal preemption. Under the *Skelly* reasoning, however, this argument would not place the cases within the federal question jurisdiction of this court.

In 1974, in *Phillips, supra*, the Supreme Court again found that a suit did not arise under federal law, explaining that "in effect, [the] action [sounded] in *quantum meruit*, whose source [was] state law and not federal law. . . . To the extent that [federal legislation was brought into play,] it [was] clear that [its] effect [was] no more than to overcome a potential defense to the action." *Id.* 415 U.S. at 129, 94 S.Ct. at 1004 (citations omitted). That reasoning applies with equal force to the cases now before the court.

Given these clear pronouncements from the United States Supreme Court, this court concludes that the better reasoned lower court cases have followed these admonitions and concluded that in cases such as the ones before this court, no federal question jurisdiction is present. *See, e. g., Home, supra; Potomac Passengers Association v. Chesapeake & Ohio Railway Co.*, 520 F.2d 91 (D.C.Cir. 1975); *California Federal Savings & Loan Association v. Lasher*, (C.D. Cal.1979); and *Michigan Savings & Loan League v. Francis*, 490 F.Supp. 892 (E.D. Mich.1980).

As far as the cases which have upheld declaratory judgment jurisdiction are concerned, the court would respectfully observe that each and every one of them, in this court's opinion, reach conclusions inconsistent with pronouncements of the Supreme Court or which result in judicial anomalies. The *Glendale, supra*, litigation, for example, produced what the federal associations themselves described as an absurd situation in which certain cases had been remanded to state court while the identical declaratory judgment actions proceeded to the merits in federal court. Such a situation not only impinges upon basic concepts of federalism and thwarts judicial economy, but also is inconsistent with the principle that the Declaratory Judgment Act itself provides no independent jurisdictional basis.

The other cases all appear to either uphold declaratory judgment jurisdiction by applying and extending the distinction between raising a federal defense and raising federal preemption as a basis for jurisdiction, a proposition this court has rejected, or by arguing from *Wycott, supra*, that if an actual controversy exists between the parties, the court has jurisdiction. *See, e. g., Conference of Federal Savings and Loan Associations v. Stein*, 604 F.2d 1256 (9th Cir. 1979), *aff'd. by order*, 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980); and *First Federal Savings and Loan Association of Boston v. Greenwald*, 591 F.2d 417, 423 n.8 (1st Cir. 1979) (questioning removal jurisdiction but finding, in a cursory footnote, that the court had declaratory judgment jurisdiction). The court has fully discussed, *supra*, the first line of reasoning and it will not burden this opinion by reiterating that discussion here.

The problem with the second line of reasoning is that, in this court's opinion, it is premised on a misreading of *Wycott*. In *Wycott*, the Court held, in essence, that a justiciable controversy did not exist between the parties in that there was no showing that the declaratory defendant was threatening to take some action that would prevent plaintiff from operating under its certificate from the Interstate Commerce Commission. In other words, the controversy was not definite, concrete, mature, or ripe for disposition but instead presented a hypothetical situation, the resolution of which would not end the controversy. The

Court went on to say, *in dictum*, that it also had serious reservations concerning the question whether even if the case was ripe a district court would have jurisdiction to entertain it. The cases relying on *Wycoff* intermingle the concept of ripeness, on the one hand, with "arising under" federal question jurisdiction on the other. By commingling what the Supreme Court has defined as separate and distinct concepts, those cases find that if a ripe controversy exists, "arising under" jurisdiction follows. This court does not believe that a close reading of *Wycoff* will support this view.

The federal associations have also asserted that the Supreme Court's summary affirmance in *Stein, supra*, makes the Ninth Circuit's jurisdictional discussion in that case binding on the court. *Witlow v. Hodges*, 539 F.2d 582 (6th Cir. 1976). As Judge DeMascio noted in *Francis, supra*, however, the Supreme Court apparently did not consider *Stein's* jurisdictional discussion in affirming *per curiam* without an opinion. That observation is further supported by the fact that the summary of the question presented on appeal to the Supreme Court contained in United States Law Week does not mention any jurisdictional shortcomings the case may have had or raised by the parties. 48 U.S.L.W. 3494. Finally, not only does the *Stein* decision have some fundamental problems in its reasoning on the jurisdictional question as explained above, but this court cannot accept the proposition that the Supreme Court intended to overrule a consistent line of its cases dating back more than 100 years by summarily affirming without an opinion a case in which the jurisdictional basis for the action was not a question on appeal to the court.

The federal associations' last argument in support of declaratory judgment jurisdiction in the cases they filed is derived from *Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977). In *Douglas*, plaintiffs challenged the constitutionality of two Virginia statutes which restricted fishing in Chesapeake Bay and in the Atlantic ocean near Virginia. Plaintiffs claimed that the statute allowing residents of Virginia to fish in those waters while at the same time excluding non–residents from those same waters violated the Equal Protection Clause of the United States Constitution. They also claimed that the other statute, which limited the issuance of Virginia fishing licenses to United States citizens, was invalid because it conflicted with rights granted to them under their federal fishing licenses.

A three–judge court sustained both claims. *Seacoast Products, Inc. v. Douglas*, 432 F.Supp. 1 (E.D.Va.1975). On appeal, the United States Supreme Court affirmed, holding that the Virginia laws denied plaintiffs "their federally granted right to engage in fishing activities on the same terms as Virginia residents," 431 U.S. at 283, 97 S.Ct. at 1751, and that therefore the statutes were invalid under the Supremacy Clause.

The federal associations in the instant cases find support for their jurisdictional argument in a reference the *Douglas* court made to the fact that one of plaintiffs' claims, although "basically constitutional in nature [would be] treated as 'statutory' for purposes of [the Court's] practice of deciding statutory claims first to avoid unnecessary constitutional adjudications." *Id.* at 272, 97 S.Ct. at 1745. The federal associations argue from that, and a corresponding footnote, n.6, that their claims are not only constitutional in nature, because federal preemption is derived from the Supremacy Clause, but also raise a federal question because the ultimate decision in these cases depends on the interpretation of a regulation promulgated pursuant to an Act of Congress.

This court does not read *Douglas* in the manner suggested by the federal associations. The discussion referenced in *Douglas* is not a jurisdictional discussion of issues. It relates solely to a doctrine that has developed over the years to avoid constitutional rulings whenever possible. The Supreme Court also had no need to question the lower court's jurisdiction in *Douglas*. As the court below noted, it had diversity of citizenship jurisdiction over the matter.

432 F.Supp. at 2, n.2. Additionally, plaintiffs in *Douglas* had a constitutional claim arising directly under the fourteenth amendment which conferred subject matter jurisdiction on the court. Most important in this context, however, is the fact that plaintiffs were asserting that they had a federal right, by virtue of their federal fishing licenses, "to fish in Virginia waters on the same terms as Virginia residents." 431 U.S. at 281, 97 S.Ct. at 1749.

By contrast, in the cases at bar, there is no diversity of citizenship between the parties. The federal associations do not have an independent constitutional right such as the Equal Protection Clause to look to as a source of federal jurisdiction. The only right they have is one created by the contract between the parties—the right to declare immediately due and owing the entire mortgage balance if the property is transferred. Unlike the federal fishing license in *Douglas*, which gave plaintiffs' a federal right to fish on the same terms as residents of Virginia, the federal regulation in these cases merely acknowledges the right of the federal associations to include due on sale clauses in their mortgages. The right to enforce that clause, however, does not derive from the regulation but is derivative of the contract between the parties. Accordingly, these declaratory judgment actions must be dismissed for lack of a proper jurisdictional basis.

### MORTGAGOR DECLARATORY ACTIONS

That leaves the court with three declaratory judgment actions filed by mortgagors in this court. The question again is whether the court has jurisdiction to hear them.

In *Darr v. First Federal Savings & Loan Association of Detroit*, Civil Action No. 80–71536, plaintiffs allege that the action arises under the Supremacy Clause of the United States Constitution and under the Homeowners Loan Act of 1933. The problem with this case is the same problem faced by the Mottleys in *Louisville and Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). In *Mottley*, the railroad settled a claim that the Mottleys had against it by giving them free train passes for life. A number of years later, however, Congress passed a statute prohibiting the issuance of such free passes. The Mottleys instituted an action in federal court for specific performance. In addition, they alleged that the statute did not apply to them or, if it did, that it was invalid under the Constitution. In deciding that such a case did not arise under federal law, the Court said:

> It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.

*Id.* at 152, 29 S.Ct. at 43.

Similarly, in the *Darr* case, plaintiffs' action arises out of the state law of real property, to wit: unreasonable restraints on alienation, and state contract law. By injecting the Supremacy Clause, plaintiffs are doing nothing more than anticipating a federal defense. Likewise, plaintiffs do not assert, nor could they assert, that any rights relevant to this case flow to them by virtue of the Homeowners Loan Act. Again, it is raised in anticipation of defendant's probable defense. Under the reasoning of *Mottley* and a host of other cases, therefore, this case must be dismissed for lack of jurisdiction.

The last two cases—*Lindsay v. First Federal Savings & Loan Association of Detroit*, Civil Action No. 80–72015, and *Berkley v. First Federal Savings & Loan Association of Detroit*, Civil Action No. 80–71799—present a slightly different situation. In *Lindsay*, the gravamen of the complaint, like all of the other cases, is state law. In addition, however, plaintiffs have challenged the constitutionality of the Homeowners Loan Act under the Due Process Clause of the United States Constitution.

They assert that due on sale clauses and the regulations promulgated by the Federal Home Loan Bank Board which allow federal associations to use such clauses constitutes an *ex post facto* law. They have also raised the ninth amendment to the United States Constitution. At first glance, the court is tempted to conclude that all of the federal claims are raised in anticipation of a probable defense. Without knowing the exact nature of the arguments plaintiffs intend to advance along those lines, however, the court has decided to withhold any decision until it learns more about the legal theories plaintiffs are espousing. Since subject matter jurisdiction is always open to question, however, the court will reassess its position relative to jurisdiction at an appropriate time.

In *Berkley*, a federal statute not raised in any of the other cases has been referenced (the Truth in Lending Act, 15 U.S.C. §§ 1631–45) as well as the Equal Protection Clause of the United States Constitution. Treating them in reverse order, the court would note that it would appear that plaintiffs intended to rely on the Due Process Clause of the fifth amendment rather than the Equal Protection Clause of the fourteenth amendment which applies to the States. In any event, it is not clear how the equal protection concepts of the fifth amendment would have any application whatsoever to this case. Whatever application equal protection concepts may have, it would appear once again that a federal defense is being anticipated. Until the court learns more about this argument, however, it will withhold decision.

The Truth in Lending Act claim would appear initially to raise a legitimate claim for declaratory relief. Whether the claim has any merit would appear to be a question of law and the subject of appropriate motions which would result in an early resolution of this question.[6]

The court has prepared and entered orders consistent with this Opinion, copies of which have been sent to the parties along with this Opinion.

---

**6.** In *Lindsay v. First Federal Savings and Loan Association of Detroit*, Civil Action No. 80–72015, plaintiffs have filed a motion to stay briefing. Because of the court's remand or dismissal of all of the companion cases except *Lindsay* and one other case, however, it need take no action on that motion at this time.